UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO JOSEPH FERNANDEZ,<br><br>    Plaintiffs,<br><br>    v.<br><br>CARL McKNIGHT, individually and in his capacity as a Sergeant in the Fresno Police Department, et al.,<br><br>    Defendants.<br>_____/ | Case No. 1:12-cv-557 - BAM<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Document 22) |

This matter is before the Court on the motion for summary judgment filed by Defendants Carl McKnight and Jerry Dyer ("Defendants") on November 15, 2013. (Doc. 22).[1] Plaintiff Angelo Fernandez ("Plaintiff" or "Mr. Fernandez") failed to file his opposition to the motion by December 6, 2013, and on December 12, 2013, the Court vacated the hearing set for December 20, 2013.[2] Plaintiff filed a late opposition on December 20, 2013 (Doc. 23), to which Defendants replied on December 27, 2013. Having carefully considered the parties' submissions and the record, and for all the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment.

---

[1] This matter proceeds before the undersigned as a result of an order dated September 5, 2013, and the parties' voluntary consent to the jurisdiction of the undersigned for all proceedings in this case, including trial and entry of final judgment. (Doc. 21). *See* 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E.D. Cal. L.R. 301, 305.

[2] The remedy for any late opposition in the Local Rules of the United States District Court for the Eastern District of California is to deny the late party an opportunity to be heard at oral arguments. L.R. 230(c).

1

# BACKGROUND

**A.     Factual Background**

This case arises out of the shooting of Plaintiff Angelo Fernandez by Defendant Sergeant Carl McKnight ("Sgt. McKnight") after a brief foot chase near a strip mall in central Fresno. Mr. Fernandez, who survived the May 28, 2011 incident, brings a claim of excessive force under the Fourth Amendment. The facts viewed in the light most favorable to Plaintiff are as follows.

**1.     Events Leading up to the Foot Chase**

Prior to May 28, 2011, Mr. Fernandez was identified by the Violent Crime Impact Team (VCIT) as a suspect wanted in a recent carjacking in which a victim had been shot with a sawed off shotgun. Sgt. McKnight supervises the VCIT, a specialized unit of the Fresno Police Department which focuses on apprehending suspects accused of violent crimes. *See* Declaration of Carl McKnight ("McKnight Decl."), Ex. 4 (Doc. 22-6 at 2). As a suspect in the carjacking, the VCIT conducted an investigation that revealed the following:[3]

- At the time of the carjacking, Mr. Fernandez was a wanted parolee at large, listed as "armed and dangerous." *See* McKnight Decl ¶ 2.
- The sawed off shotgun alleged to have been used to shoot the victim in the recent carjacking was still outstanding;
- Mr. Fernandez was a known member of the "Foodtown Bulldog" street gang;
- Mr. Fernandez had a prior felony conviction for resisting arrest and evading law enforcement;
- The VCIT listed Mr. Fernandez as a potential "3 Striker" which Sgt. McKnight believed increased the potential for violent resistance by any suspect wanting to avoid a potential life sentence;[4]

---

[3] Mr. Fernandez generally does not dispute the facts related to the VCIT's investigation. He claims he does not have information or belief as to the truth or falsity of the facts. (Doc. 24-1, Facts 1-8.) The Court will address those facts which Mr. Fernandez purports to dispute.

[4] Plaintiff concedes that he has had multiple felony convictions, including for resisting arrest and evading law enforcement, but he argues that he has never been convicted of a felony offense that qualifies as a "strike" under California's "three strikes law." (Doc. 24-1 at 2). Plaintiff's dispute does not raise a material issue of fact relevant to the Court's determination of whether Sgt. McKnight used reasonable force.

- Informants had indicated that Fernandez had told family members that he would "not be taken alive" and that he would "shoot it out" with the police if confronted;[5]
- Sgt. McKnight also had information that Mr. Fernandez was a known user of methamphetamine which Sgt. McKnight believed had a propensity to make individuals more paranoid and violent.

After learning that Mr. Fernandez was a key suspect in the carjacking shooting, officers began a search for Mr. Fernandez. By the morning of May 28, 2011, VCIT had developed information that Mr. Fernandez may be located at an apartment at 1491 N. Peach, in the City of Fresno. Just before noon on May 28, 2011, VCIT members conducting undercover surveillance observed Mr. Fernandez enter a white Lincoln and drive to the Le96 Market at Belmont and Peach. VCIT members watched as Mr. Fernandez and two other subjects entered the Le96 Market while Sgt. McKnight and other VCIT members converged on the area.

Once officers were on the scene, Sgt. McKnight ordered the officers use their undercover vehicles to surround the parked Lincoln when Mr. Fernandez and the others returned to the vehicle. When all three subjects had re-entered the white Lincoln, the VCIT members quickly used undercover police vehicles to block the Lincoln in all directions. Sgt. McKnight and other VCIT members were all wearing police vests displaying Fresno Police badges as well as the letters "POLICE" in large font on the vests. As VCIT members exited their vehicles, Sgt. McKnight and others announced, "Fresno Police, you're under arrest." (Doc. 25-1 at 12).

**2.    The Foot Chase and Shooting**

After officers surrounded Mr. Fernandez's vehicle, Mr. Fernandez got out of the car and ran from the scene. *See* Declaration of Angelo Fernandez ("Fernandez Decl."), Ex. 3 (Doc. 24-3 at 1). Despite being yelled at that he was under arrest, Mr. Fernandez continued running as he looked back over his shoulder at Sgt. McKnight and other officers chasing him on foot. (Doc. 24-2 Fact 12.)

At one point during the chase, Officer Bowling managed to briefly catch and grab Mr.

---

[5]     Plaintiff denies that he has ever told a family member or anyone else that he would resist arrest. Pl's Response to DUF # 7. (Doc. 25-1 at 8). Plaintiff's statement does not raise a material issue of fact relevant to the motion as he admits to fleeing and actively evading arrest when confronted by Sgt. McKnight, as discussed more fully below.

1  Fernandez.  Undeterred, Mr. Fernandez "twist[ed]" to escape Bowling's grasp and continued to run
2  from pursuing officers in the direction of his mother's home.[6]

Concerned that Mr. Fernandez would enter the busy strip mall area, Sgt. McKnight continued to chase Mr. Fernandez.  As he chased Mr. Fernandez through the parking lot, Sgt. McKnight fired a single shot, striking Mr. Fernandez in the back.  McKnight Decl. ¶ 7.  Despite being hit, the shot only caused Mr. Fernandez momentarily to pause before he briefly continued flight from officers. *Id*.  Soon after his injury, Sgt. McKnight and other officers caught Mr. Fernandez. He was placed under arrest.

The parties' dispute what happened immediately after Mr. Fernandez was placed under arrest.  Plaintiff indicates that after his injury officers repeatedly kicked him in the head while taunting him.  Once subdued, Mr. Fernandez alleges that Sgt. McKnight personally prevented emergency medical services from giving immediate first aid to Plaintiff for eleven minutes.  Sgt. McKnight states that after Plaintiff was shot, he began to violently kick and punch officers until he was finally subdued and handcuffed.  Once subdued, Sgt. McKnight contends that he immediately provided Mr. Fernandez with first aid until emergency medical services arrived.[7]  Mr. Fernandez maintains that at all times during this incident he was unarmed. Fernandez Decl. ¶ 4.

**B.     Requests for Admissions**

Defendants' motion relies in part on Plaintiff's answers to Defendants' Requests for Admissions.  The Requests for Admissions ("RFA") were deemed admitted after Plaintiff failed to respond within 30 days of service.  (Doc. 22 at 1); Fed. R. Civ. P. 36(a)(3) (Failure to timely respond to requests for admission results in automatic admission of the matters requested as Federal Rule of

---

[6] Plaintiff disputes that he violently swung his fists when wrestling away from Officer Bowling, as Sgt. McKnight states in his declaration.  (Doc. 22-6 ¶ 6.) Whether Plaintiff tried to strike Officer Bowling does not raise a material issue of fact for the purpose of Defendant's summary judgment motion.  The evidence shows that after Plaintiff was caught by Officer Bowling, he got away and continued to flee.  Therefore, there is no dispute that Plaintiff was actively resisting arrest in his encounter with Officer Bowling.

[7] Although Plaintiff states in the narrative section of his opposition that Defendants denied him post-arrest medical care, Plaintiff does not make this allegation in his operative complaint. In addition, Plaintiff does not present any evidence or argument supporting this claim.  New argument or allegations in a summary judgment opposition do not raise triable issues of fact.  *Schuster v. Bannister,* 2012 WL 6917787 (D.Nev. 2012) (On summary judgment, the court does not consider new arguments or allegation raised outside of the operative pleadings); *Paulick v. Starwood Hotels & Resorts Worldwide, Inc.*, 2012 WL 2990760, 13 (N.D.Cal. 2012) (On summary judgment, defendants were entitled to rely on the operative complaint in defending against Plaintiff's claims). Thus, Court need not consider claims raised in Plaintiff's Opposition that were not alleged in the operative complaint.

4

Civil Procedure 36(a) is self-executing). Defendants rely on the deemed admissions and argue Defendants are entitled to summary judgment because the deemed admissions foreclose Plaintiff's causes of action. (Doc. 22 at 1).

This case was filed in April 2012, by Counsel Catherine Campbell, who later withdrew from the case on October 29, 2012. (Doc. 14). The very next day, on October 30, 2012, while Plaintiff was acting *pro per*, Defendants propounded a total of twenty RFA's. Plaintiff did not respond to the RFA, and they were deemed admitted pursuant to Rule 36. Plaintiff's current counsel appeared in this case on March 8, 2013. (Doc. 16). Three days after appearing in this case, and before the fact discovery deadline, Plaintiff's counsel responded to Defendants' RFA's. In Plaintiff's opposition to the Motion of Summary Judgment, Plaintiff does not address Defendant's objection or justify the delay in his responses.

After reviewing this motion, the Court finds that regardless of whether the RFA's are deemed admitted or not, summary judgment is appropriate. Even with the disputed facts plaintiff raises, Plaintiff's opposition fails to create triable issues of fact to warrant denial summary judgment, as explained further below.[8] Plaintiff's disputed facts are not material and do not raise triable issues as to Sgt. McKnight's use of objectively reasonable force. The facts Plaintiff disputes are not enough to survive summary judgment. For that reason, the Court does not rely on Plaintiff's deemed admissions to support summary judgment, and therefore, the Court's ruling on the merits of Defendants' Motion for Summary Judgment renders any deemed admissions moot.

In the alternative, and in the interest of justice, the Court construes Plaintiff's opposition as a motion to withdraw or amend their admissions pursuant to Fed. R. Civ. P. 36(b). The Ninth Circuit has long recognized the authority of the district court to permit late responses to requests for admission. *See French v. United States*, 416 F.2d 1149, 1152 (9th Cir. 1968). Plaintiff was without counsel when the requests for admissions were served and the Court is particularly sensitive to the challenges faced by *pro se* litigants unfamiliar with the judicial process. *See Balistreri v. Pacifica Police Dept.*, 901

---

[8] Specifically, the Court has considered the "disputed" facts and evidence raised by Plaintiff in "Plaintiff's Response to Defendants' Separate Statement of Undisputed Facts," Doc.24-1, and "Plaintiff's Separate Statement of Undisputed Material Facts," Doc.24-2.

F.2d 696, 699 (9th Cir. 1988), *overruled in part on other grounds by Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, withdrawal of the admissions is appropriate because a contrary result would practically eliminate the presentation of the merits in the case, and, in light of the fact that Plaintiff's responses were served well before the fact discovery deadline, withdrawal does not prejudice Defendant. *See Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995); *F.C. v. County of Los Angeles*, 2010 U.S. Dist. LEXIS 136259 (C.D. Cal. Dec. 13, 2010)(construing an opposition as a motion to withdraw or amend . . . admissions pursuant to Fed. R. Civ. P. 36(b)). Accordingly, the Court GRANTS Plaintiff's construed motion to withdraw the admissions.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1132 (D. Ariz. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

1    If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in the original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this respect. *Id*. at 929. *See also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the province of the jury or fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

## DISCUSSION

**A.    Dismissal of *Monell* Claim against Chief of Police Jerry Dyer**

Plaintiff filed the underlying complaint on April 10, 2012, naming as defendants Chief of Police Jerry Dyer and individual Fresno City Police Officer Sergeant Carl McKnight. (Doc. 1). Plaintiff brought two claims for relief including: (1) deliberate indifference to physical safety under 42 U.S.C. § 1983 against Defendant McKnight and (2) *Monell* liability for "failure to train supervise and discipline employees" against Defendant Chief of Police Jerry Dyer.

Defendants' motion for summary judgment argues that summary judgment on Plaintiff's single *Monell* claim against Defendant Chief Dyer is appropriate because there is no evidence that any injuries were caused by a policy, practice, or custom. In his opposition, Plaintiff agrees. Plaintiff concedes that—at the present time—there is insufficient evidence "to support the claim of liability

against Defendant Dyer." (Doc. 24 at 16). As a result, Plaintiff states that he has chosen not to assert a *Monell* claim against Defendant Chief Dyer at this time. *Id.* Although Plaintiff contends that claims could be made against Chief Dyer at a later date, he asks the court to dismiss all claims against Defendant Dyer without prejudice. *Id.*

Judgment is appropriate against plaintiff and in favor of Chief Dyer. Plaintiff has failed to support his claim. Where there is no genuine dispute as to any material fact, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Therefore, judgment will be entered in favor of Chief Dyer. Thus, in light of Chief Dyer's arguments and Plaintiff's express abandonment of his *Monell* claim, summary judgment in favor of Chief of Police Jerry Dyer is GRANTED. Accordingly, the remainder of this Order addresses Defendant Sgt. McKnight's only remaining contention—that Plaintiff's sole claim against Sgt. McKnight is precluded because Sgt. McKnight's use of force was objectively reasonable under the circumstances.

**B.     Fourth Amendment Excessive Force**

Plaintiff claims that Sgt. McKnight violated his Fourth Amendment rights by using deadly force. Defendant argues that Plaintiff cannot make out an excessive force claim under the Fourth Amendment because Sgt. McKnight used reasonable force to protect the public safety and to overcome Plaintiff's flight and resistance. (Doc. 22). Alternatively, Defendant argues that, in the event a constitutional violation occurred, summary judgment should nonetheless be granted because Sgt. McKnight is entitled to qualified immunity.

   **1.     Deadly Force Standard**

The Fourth Amendment prohibition against unreasonable searches and seizures permits law enforcement officers to use only such force to effect an arrest as is "objectively reasonable" under the circumstances. *Tennessee v. Garner*, 471 U.S. 1 (1985); *Graham v. Connor*, 490 U.S. 386, 397 (1989). In *Tennessee v. Garner*, the Supreme Court considered the constitutionality of permitting the use of deadly force to prevent the escape of a fleeing felon. The Court held that it was unreasonable under the Fourth Amendment for an officer to "seize an unarmed, non-dangerous suspect by shooting him dead," but that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to

prevent escape by using deadly force." *Garner*, 471 U.S. at 11.

Moreover, "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and, where feasible, some warning has been given." *Id.* at 11-12. As noted by the Ninth Circuit, the question in *Garner* was:

> whether, to justify the use of deadly force, an officer must believe only that a suspect is fleeing or also that the suspect represents a serious and immediate threat to the officer or others. In either case, the Court assumed that the belief would have to be reasonable, an inquiry that under the Fourth Amendment always depends upon objective factors and not upon sincerity of belief.

*Price v. Sery*, 513 F.3d 962, 967 (9th Cir. 2008).

In *Graham v. Connor*, the Court explained whether the force used in a particular instance is reasonable requires "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (*quoting Tennessee,* 471 U.S. at 8. Factors to consider include "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to safety of the officers or others, . . . (3) whether he [was] actively resisting arrest or attempting to evade arrest by flight," and any other "exigent circumstances [that] existed at the time of the arrest." *Chew v. Gates*, 27 F.3d 1432, 1440-1441 (9th Cir. 1994). "The three factors articulated in *Graham*, and other factors bearing on the reasonableness of a particular application of force, are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure." *Id.* at 1441.

The amount of force used in this case is not in dispute. The parties agree that Sgt. McKnight used deadly force when he fired a single shot from his firearm striking Mr. Fernandez in the back. McKnight Decl. ¶ 7. *See Blanford v. Sacramento County*, 406 F.3d 1110, 1115 n.9 (9th Cir. 2005) (shooting at a suspect is the use of deadly force). In assessing the reasonableness of Sgt. McKnight's actions, this quantum of force must be measured against the *Graham* factors below.

**2. Severity of the Crime**

Under the first of the *Graham* factors, the Court considers the severity of the crime at issue. Prior to his confrontation with Mr. Fernandez, Sgt. McKnight had information that Mr. Fernandez was a wanted suspect in a recent carjacking where a victim was wounded with a sawed off shotgun.

Plaintiff does not dispute that he was a suspect in the carjacking where a sawed off shotgun was used. (Doc. 25-1, Fact 1). Plaintiff denies however that the carjacking victim "was seriously wounded." (Doc. 24-4, Decl. Doug Foster ¶ 5.) This dispute does not raise a material issue of fact with respect to the severity of the crime for which Mr. Fernandez was being sought.

The possession of a sawed off shotgun is as a matter of law a "crime of violence" under 26 U.S.C. § 5845. *See United States v. Amparo*, 68 F.3d 1222 (9th Cir. 1995) (upholding jury instruction that possession of a sawed off shotgun is a crime of violence); *see also United States v. Dunn*, 946 F.2d 615 (9th Cir. 1991) ("possession of an unregistered firearm is presumptive evidence of unlawful violent intentions and, therefore, involves the substantial risk of violence necessary to label the possession a crime of violence under § 16(b)). While Mr. Fernandez was not presently involved in the commission of a crime when captured, Sgt. McKnight had probable cause to believe Plaintiff recently committed a crime of violence. No party disputes that the sawed off shotgun used in the carjacking had not been recovered, and therefore it was objectively reasonable for Sgt. McKnight to have a specific reason to suspect that Mr. Fernandez would have a gun. Further, Sgt. McKnight had information that Plaintiff was a methamphetamine abuser, who was a convicted felon and a gang member with a history of resisting arrest and evading officers. Based on this information, Sgt. McKnight had probable cause to believe he was pursuing a possibly armed and dangerous individual with an open arrest warrant who would seek to evade capture.

"*Graham* establishes generally that more force is appropriate for a more serious offense and less force is appropriate for a less serious one . . . ." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). Here, Sgt. McKnight and the other officers were endeavoring to arrest a person believed to have just committed a violent carjacking and they were entitled to the inference that Fernandez might be armed and dangerous. Thus, the threat level was high.[9]

///

---

[9] It is instructive to compare the seriousness of the crime at issue here with those cases where the minor nature of the offense warranted a finding that law enforcement officers had used excessive force. *See, e.g. Lucas v. City of Visalia*, 2013 U.S. Dist. LEXIS 98549 (E.D. Cal. July 13, 2013) (denying qualified immunity in a taser case where officers were dispatched to Plaintiff's home for a medical call); *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011)( denying qualified immunity to officer who fatally shot suspect in the chest in the course of responding to complaint of loud music).

### 3. Immediate Threat to Safety

The second *Graham* factor asks whether the suspect posed an immediate threat to the safety of the officers or others. This is the "most important" factor. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011). If there is "probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," an officer may use deadly force "if necessary to prevent escape, and if, where feasible, some warning has been given." *Garner*, 471 U.S. at 11-12. "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). "A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Id.*

At the time of the shooting, the objective factors demonstrate that Mr. Fernandez was an immediate threat to safety. Surveillance of Mr. Fernandez and a criminal investigation by the VCIT unit revealed that Plaintiff was alleged to have been highly dangerous individual. He was wanted for a parole violation and designated by authorities as "armed and dangerous." McKnight Decl. ¶ 2; DUF # 2, Doc. 25-1 at 2. He was suspected of a recent carjacking using a sawed off shotgun and was a known member of the "Foodtown Bulldog" street gang. DUF's # 1, 2, and 4, Doc. 25-1. It is undisputed that Plaintiff had at least five prior felony convictions, including for resisting arrest and evading law enforcement. (Doc. 25-1; Doc. 24-6 at 9). Thus, the events leading up to the confrontation heightened the security threat to officers.

Once the confrontation began, Mr. Fernandez escalated the threat to safety. Around noon on Saturday, May 28, 2011, Sgt. McKnight and the other officers surrounded Plaintiff's vehicle in a strip mall parking lot. Police identified themselves and attempted to arrest Mr. Fernandez. Refusing to yield to police authority, Mr. Fernandez immediately fled the vehicle and took off running through the parking lot. When Plaintiff began to flee, Sgt. McKnight believed that Mr. Fernandez would enter the market where he would have access to innocent civilians. McKnight Decl. ¶ 6. Mr. Fernandez continued to flee and failed to comply with police commands to stop. He evaded Officer Bowling's attempt to apprehend him. Thus, there is not an issue of fact that a wanted parolee with a history of violence was fleeing officers in a populated area and denying their lawful commands.

1 Plaintiff attempts to raise an issue of fact as to the direction of his flight. Plaintiff concedes
2 that he ran from the officers, but he denies that he ran in the direction of the open market. Instead,
3 Plaintiff explains that he ran parallel to the market toward his mother's house. Fernandez Decl. ¶ 7.
4 Plaintiff attempts to create a fact dispute by arguing that he was attempting to run home. However,
5 Plaintiff does not dispute that he was evading officers, refusing to comply with commands, and that he
6 ran through the strip mall parking lot near the populated market. Plaintiff fails to raise a genuine issue
7 of material fact with respect to his escape. Whether Plaintiff actually intended to enter the crowded
8 market or simply attempt to avoid arrest is immaterial because Plaintiff's intent was not known to the
9 officers. As noted above, Sgt. McKnight reasonably believed that Mr. Fernandez could enter the busy
10 market and thereby increase the threat to the public, regardless of Mr. Fernandez's intent.

11 Deadly force was reasonable in light of these circumstances. In his declaration, Sgt. McKnight
12 stated that investigations revealed that Plaintiff was a wanted, convicted felon with a violent history.
13 There is no dispute that Sgt. McKnight and the other officers were confronted with an admitted
14 methamphetamine user whose conduct caused them to reasonably believe he was attempting to avoid
15 capture.[10] This behavior objectively enhanced Sgt. McKnight's concerns that Mr. Fernandez might
16 pose a risk to their safety or the community generally. Here, objective factors justify Sgt. McKnight's
17 concern. *Deorle*, 272 F.3d at 1281 (objective factors must justify the safety of the officer or others; a
18 simple statement by the officer is not enough). The Court concludes that Sgt. McKnight reasonably
19 perceived that Mr. Fernandez's actions presented a substantial risk to the other officers and others in
20 the shopping center. Due to this immediate threat, Sgt. McKnight's force was justified to accomplish
21 restraint of a potentially dangerous suspect.

22 Generally, "[w]here the officer has probable cause to believe that the suspect poses a threat of
23 serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to
24 prevent escape by using deadly force." *Garner*, 471 U.S. at 11. The determination of whether probable
25 cause existed to justify the use of deadly force requires consideration of the "facts and circumstances
26 within the officer's knowledge" at the time. *Id.* (citation omitted).

---

[10] In fact, Plaintiff admits that he ingested methamphetamine shortly before his arrest. (Doc. 24-6 at 2.)

Based upon these facts, it was reasonable for Sgt. McKnight to be fearful of an armed or violent response from Mr. Fernandez due to his active flight and resistance.

### 4. Active Resistance or Attempts to Flee

Plaintiff concedes that he was actively evading arrest at the time these events occurred. Plaintiff admits that when Sgt. McKnight and the other undercover police vehicles blocked his vehicle, Plaintiff exited his car and began to run away. Fernandez Decl. ¶ 4. Plaintiff also admits that during the foot chase, an officer briefly grabbed him. Plaintiff managed to escape and kept running, continuing to evade arrest. *Id.* at ¶ 6. Therefore, the Court finds there is no evidence in the record to dispute Defendant's showing that Plaintiff was attempting to flee from the officers and evade arrest.

### 5. Consideration of the Totality of the Circumstances

In addition to the *Graham* factors described above, a consideration of the totality of the circumstances may look to other factors as well. *See Bryan v. MacPherson,* 630 F.3d 805, 826 (9th Cir. 2010). Such additional factors can include alternative levels of force, warnings, the existence of probable cause or the conformity of the defendant officer's actions with department guidelines. *Id.* at 1042.

Given the totality of the undisputed facts in this case, the Court determines that Sgt. McKnight's use of deadly force was objectively reasonable. The material and undisputed facts establish that at the time of Mr. Fernandez's arrest Sgt. McKnight knew that Mr. Fernandez was a wanted parolee at large, admittedly known as a methamphetamine user and a gang member, and who was recently named as a suspect in a violent carjacking where a person was wounded. The shotgun from that carjacking was never recovered and as a result, Sgt. McKnight had probable cause to believe that Plaintiff was armed at the time of the confrontation. When Sgt. McKnight arrived on the scene, he and the other officers identified themselves as police and warned Plaintiff that he was under arrest. Plaintiff ignored Sgt. McKnight's commands and immediately ran away towards a public shopping center at noon on a Saturday. After police officers issued further warnings to stop, Plaintiff was caught by Officer Bowling. Officer Bowling managed to grab a hold of Plaintiff's jacket, but instead of complying, Plaintiff struggled to free himself and continued running near the shopping center.

Plaintiff does not dispute these facts leading up to the chase and what occurred in the

13

1 beginning of the chase, he does, however, dispute whether Sgt. McKnight gave a verbal warning
2 immediately before firing his weapon.

3       The Ninth Circuit has found an officer's failure to give a warning immediately prior to using
4 deadly force a significant factor for the court to consider. *See Deorle*, 272 F.3d at 1284*; Brewer v. City*
5 *of Napa*, 210 F.3d 1093, 1094-1095 (9th Cir. 2000) (police officer gave warning before setting dog on
6 suspect). While Plaintiff does not dispute that Sgt. McKnight and the other officers yelled multiple
7 times, "Stop, police. You're under arrest," Plaintiff argues that he never *heard* Sgt. McKnight warn
8 him to stop. In Sgt. McKnight's declaration, he states that he gave Plaintiff several warnings to halt,
9 however, he does not allege that he warned Plaintiff that he would shoot if Plaintiff failed to comply
10 with his orders.

11       Under the facts of this case, the Court finds *Blanford v. Sacramento County* highly instructive.
12 In *Blanford*, the Ninth Circuit addressed a similar scenario where an officer's warnings were given but
13 not heard by the Plaintiff. 406 F.3d 1110, 1117 (9th Cir. 2005). In that case, a man was reported to be
14 walking down the street holding a Civil War-era sword. Officers responded to the scene and they
15 repeatedly yelled at the man to drop the sword or they would shoot. The man continued walking down
16 the street, growled aggressively at one point, and turned into a residence. *Id.* at 1112-13. Neither
17 officer wanted the man to enter the residence or its yard for fear of the occupants' safety. *Id.* at 1113.
18 It was later discovered that the man was wearing headphones turned up loud, had just taken anti-
19 psychotic medicine, and resided at the house he was attempting to enter. *Id.* at 1112-14. Before
20 learning these details, the officers shot several volleys at the man, the last of which severed his spine
21 leaving him paralyzed. *Id.* at 1113-14.

22       The *Blanford* court found the deputies' behavior to be objectively reasonable under the Fourth
23 Amendment. *Id.* at 1119. In doing so, the Court considered that the "the reasonableness of a particular
24 use of force must be judged from the perspective of a reasonable officer on the scene, rather than with
25 the 20/20 vision of hindsight," *citing Graham*, 490 U.S. at 396. From the perspective of the officers,
26 Blanford posed a serious danger to those in the near vicinity because he failed to heed the officers'
27 warnings and commands. *Id.* at 1116.

28       Here, as in *Blanford*, Sgt. McKnight behaved in an objectively reasonable manner. Mr.

Fernandez was warned several times to stop. He failed to comply with each and every command. He actively resisted Officer Bowling attempt to grab Plaintiff. Instead, Mr. Fernandez continued running near the shopping center and fleeing officers. Reasonably at that time, Sgt. McKnight's primary concern was for his safety and the safety of others in the immediately adjacent shopping center.

Further, there is no Ninth Circuit case law addressing the question of what comprises an adequate warning, *i.e.,* whether "stop, you're under arrest" is enough, or whether an appropriate warning must also include "or I'll shoot." Ultimately, there is no dispute that Sgt. McKnight gave at least two warnings here. Plaintiff knew he was being stopped by police—that is the reason why he ran. He knew he was being chased by police officers. Plaintiff was chased on foot by at least two officers and managed to escape Officer Bowling's grasp—further indicating that he was being ordered to stop. Despite Sgt. McKnight's verbal commands and Officer Bowling's escalating efforts to subdue him, Plaintiff continued to resist arrest.

Accordingly, the Court has considered that there is no evidence that a specific warning of "stop or I will shoot" was given before plaintiff was shot. The Court, however, finds that this lack of specific warning, under these facts, does not create a material fact issue of whether the use of force in this case was reasonable. Here, like in *Blanford*, given the totality of the circumstances, multiple prior warnings, and the escalating nature of events, failure to give a "shooting" warning does not turn reasonable conduct to unreasonable conduct. *Id.* at 1117. Overall, in this "tense, uncertain, and rapidly evolving" situation, Sgt. McKnight had probable cause to fear for the public's safety and the split-second judgments he made in this dangerous environment was not unreasonable. *Graham*, 490 U.S. at 396-97. Under these circumstances, all of the *Graham* factors—severity of the crime, threat to officer safety, and a perceived effort to evade arrest—coupled with the totality of the circumstances show that no reasonable jury could conclude that Defendant Sgt. McKnight's actions were objectively unreasonable.

In conclusion, Sgt. McKnight's use of deadly force was objectively reasonable under the circumstances and the force used was not excessive.

C.  **Qualified Immunity**

It is well established that police officers are entitled to qualified immunity to shield them "from

liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The test for qualified immunity involves two prongs. Under the first prong, the court asks whether the facts taken in the light most favorable to the party asserting the injury show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009). Under the second prong, the court examines whether that right was "clearly established" at the time of the challenged conduct. *Id.* Either prong may be considered first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact with respect to his constitutional claims; in other words, the answer to the first part of the qualified immunity inquiry is "no." In light of the Court's finding that summary judgment be granted in Defendant's favor, the request for qualified immunity is MOOT.

**CONCLUSION AND ORDER**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED:

1. Defendant Carl McKnight is entitled to judgment as a matter of law;
2. Defendant Jerry Dyer is entitled to judgment as a matter of law; and
3. The request for qualified immunity is MOOT.

Judgment will be entered in favor of Defendants Carl McKnight and Jerry Dyer and against Plaintiff Angelo Fernandez. The Clerk shall close the file. The Final Pretrial Conference and Jury Trial dates are ordered VACATED.

IT IS SO ORDERED.

Dated: **January 31, 2014**    /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE